No. 22-1382

_____

# United States Court of Appeals
## For the Fourth Circuit

_____

**JEFFREY B. ISRAELITT**

**Appellant**

v.

**ENTERPRISE SERVICES LLC**

**Appellee**

_____

**On Appeal from the United States District Court for the District of Maryland**
**The Honorable Stephanie A. Gallagher, Presiding**
**Case No. 1:18-cv-01454-SAG**

_____

**REPLY BRIEF OF THE APPELLANT**

_____

Levi S. Zaslow
SMITHEY LAW GROUP LLC
706 Giddings Avenue, Suite 200
Annapolis, Maryland 21401
(410) 919-2990 (phone)
(410) 280-1602 (fax)
Levi.Zaslow@smitheylaw.com
*Attorney for Appellant*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 2

    a. The District Court erroneously ruled compensatory damages and a jury trial are unavailable in ADA retaliation claims as a matter of law .............. 2

       i. Denying Mr. Israelitt a jury trial was not harmless error ...................... 7

    b. The District Court erroneously dismissed Plaintiff's ADA discrimination claims on summary judgment and applied the wrong legal standards.......... 8

    c. The District Court erroneously held that adverse actions, including removal from meetings, increased workloads, severely tightened deadlines, and being removed from billable work, are not actionable adverse actions............................................................................ 14

    d. The District Court relied on evidence not admitted at trial, and which was otherwise inadmissible, in its Memorandum of Decision and Order of Judgment.................................................................................. 17

CONCLUSION....................................................................................... 18

STATEMENT REGARDING ORAL ARGUMENT ............................................. 19

CERTIFICATE OF COMPLIANCE............................................................. 20

CERTIFICATE OF SERVICE .................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Aguirre v. City of Miami*, No. 04-23205-CIV, 2007 WL 9701708, at *2 (S.D. Fla. July 18, 2007)......................................................................................... 6

*Ali v. D.C.*, 697 F. Supp. 2d 88, 92-**93** (D.D.C. 2010). ............................................ 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................. 12

*Baird v. Rose*, 192 F.3d 462, 471–72 (4th Cir. 1999).................................................. 5

*Baker v. Windsor Republic Doors*, (W.D. Tenn. 2009), *aff'd*, 414 App'x 764 (6th Cir. 2011) ................................................................................................ 6

*Baumgardner v. County of Cook*, 108 F.Supp.2d 1041, 1044–45 (N.D.Ill.2000)....... 6

*Billings v. Town of Grafton*, 515 F.3d 39, 54-55)..................................................... 15

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ........................ 15

*Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 16 n. 4 (1st Cir. 1994)............................................................... 3

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) .............. 4

*Dorriz v. District of Columbia*, 133 F. Supp. 3d 186, 199 (D.D.C. 2015)............... 14

*E.E.O.C. v. Com. Off. Prod. Co.*, 486 U.S. 107, 115–16 (1988) ................................ 5

*EEOC v. Mfrs. & Traders Tr. Co.*, 402 F. Supp. 3d 201, 234 (D. Md. 2019)........... 14

*Edwards v. Brookhaven Sci. Assocs., LLC*, 390 F. Supp. 2d 225, 235 (E.D.N.Y. 2005) ............................................................................................................ 6

*First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 867 (4th Cir. 1989)....................................................................................... 3

*Fordyce v. Prince George's County Md.*, 2014 U.S. Dist. LEXIS 117967, *24 (D. Md. 2014) .................................................................................................... 14

*Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) .................................... 5

*Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) ...................... 10

*In re UAL Corp.*, No. 02-B-48191, 2009 WL 4068023, at *6 n. 1 (Bankr. N.D. Ill. Nov. 24, 2009) ....................................................................................................... 3

*Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 573 (4th Cir. 2015) ........... 3, 10

*Jones v. Am. Postal Workers Union*, 192 F.3d 417, 427 (4th Cir. 1999) ............... 4, 5

*Keller v. Prince George's Cnty.*, 827 F.2d 952, 955 (4th Cir. 1987) ......................... 8

*Kramer v. Banc of Am. Sec.,* 355 F.3d 961, 965 (7th Cir.2004) ................................. 2

*Mogenhan v. Napolitano*, 613 F.3d 1162, 1165-66 (D.C. Cir. 2010) ................... 5, 15

*Moore v. Jackson Cnty. Bd. of Educ.*, 979 F. Supp. 2d 1251 (N.D. Ala. 2013) ........ 11

*Mueller v. Rutland Mental Health Servs., Inc.*, No. 1:05-CV-38, 2006 WL 2585101, at *5 (D. Vt. Aug. 17, 2006) ....................................................................... 6

*Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 827 (4th Cir. 1994) ................. 7, 8

*Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997) ...................................................... 6

*Rumler v. Dep't of Corr., Fla.*, 546 F. Supp. 2d 1334, 1342 (M.D. Fla. 2008) ...................................................................................................... 2, 6

*Scarborough v. Atl. Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1949) ............... 3

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) .......................................................................................................... 6

*Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 331–32 (4th Cir. 2014) ................. 5

**INTRODUCTION**

Throughout its brief, HP makes a fundamental, baseline error. It attempts to construe all of the facts in the light most favorable to it. But that is not the standard. On an appeal from the grant of a motion for summary judgment, all of the facts and reasonable inferences therefrom must be construed in the light most favorable to Mr. Israelitt.[1] Therefore, as to the appeal of the partial grant of summary judgment, the facts as set forth in Mr. Israelitt's briefing are to be taken as true – not HP's version that are flatly contracted by Mr. Israelitt. *See* Appellant's Brief, at 3-23.

The EEOC in its *amicus* brief sets forth that Appellant's analysis that compensatory damages and a jury trial are available in an ADA retaliation claim is correct. But HP asks this Court to disregard the EEOC's reasonable position. HP concedes that the District Court erred in its analysis of the ADA claim on summary judgment but requests that this Court disregard the error. HP does not appear to contest that adverse actions short of dismissal are adverse actions under the ADA – but again suggests that should be ignored. Finally, HP concedes that the District Court erred in relying on a significant document that was not admitted and was

---

[1] In fact, it is notable that HP had to pull the majority of its "facts" from a supplemental appendix, which largely consisted of an affidavit from Mr. Romas that was largely in contradiction or inconsistent with his deposition and trial testimony. Indeed, on summary judgment, Plaintiff specifically pointed out that this purported affidavit from Mr. Romas read more like a pleading than an affidavit.

otherwise inadmissible. Yet it asks for this Court to disregard that too. HP asks for too much here. As set forth in Appellant's Brief, the EEOC's *amicus* brief, and herein, Appellant respectfully requests that the Court reverse the decision of the District Court and remand for further proceedings.

## **ARGUMENT**

a.    **The District Court erroneously ruled compensatory damages and a jury trial are unavailable in ADA retaliation claims as a matter of law.**

As set forth in detail in Mr. Israelitt's brief and the EEOC's *amicus* brief, compensatory damages and a jury trial are available in an ADA retaliation claim. *See* Appellant's Brief, at 26-40; EEOC *Amicus* Brief, at 19-28.[2]

The rationale to suggest that they are not available in a retaliation case is claimed statutory silence or ambiguity as held in *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964–65 (7th Cir. 2004) (alterations in original); *Id.* at 965. *See also Rumler v. Dep't of Corr., Fla.*, 546 F. Supp. 2d 1334, 1342 (M.D. Fla. 2008) (discussing and rejecting *Kramer*). While attempting to argue they are not available, HP's entire argument, and each case it cites, ultimately relies on *Kramer* and the lack of an explicit textual reference to ADA retaliation claims in § 1981a.

HP makes no attempt to explain how (at best) statutory ambiguity can possibly foreclose compensatory damages and a jury trial – particularly when

---

[2] Given the extensive analysis set forth in both of those briefs, Mr. Israelitt will not reproduce them here.

2

courts are required to construe the ADA broadly to effect its goals and statutory ambiguity is resolved in favor of the remedy for remedial statutes. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 573 (4th Cir. 2015); *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 867 (4th Cir. 1989); *Scarborough v. Atl. Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1949). More directly, HP fails to acknowledge that the EEOC's position here is fatal to its argument.

This Court also has available to it a major benefit that the Seventh Circuit lacked in 2004 and the Ninth Circuit lacked in 2009: the position of the EEOC, which is the very agency charged with administering and enforcing the statutory provisions at issue in this litigation. *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 16 n. 4 (1st Cir. 1994) ("The EEOC is the agency entrusted by Congress to administer and enforce the employment provisions of the ADA. 42 U.S.C. §§ 12116–17."); *In re UAL Corp.*, No. 02-B-48191, 2009 WL 4068023, at *6 n. 1 (Bankr. N.D. Ill. Nov. 24, 2009) ("The EEOC has been authorized by Congress to administer the ADA and employment discrimination provisions of the Civil Rights Act through administrative proceedings and federal court litigation. 42 U.S.C. § 12117(a); 42 U.S.C.2000e–5; 42 U.S.C. § 1981a.").

The EEOC's interpretation here is thoroughly considered and more than reasonable. As discussed in the EEOC's *amicus* brief and Mr. Israelitt's brief, Congress set forth a direct, textual link between § 1981a because the remedies and procedures for violations of § 12203 are the same as the remedies and procedures available under Title I of the ADA and, unlike other claims, never excluded them. *See* EEOC *Amicus* Brief, at 19-28. *See also* Appellant's Brief, at 26-40.

This Court extends *Chevron* deference to the EEOC when it identifies its position and interpretation of statutory language in an *amicus* brief. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 427 (4th Cir. 1999) ("After reading the EEOC's brief and listening to its presentation at oral argument, we are convinced the EEOC thoroughly considered the statutory interpretation issues at hand" and extending "full *Chevron* deference."). *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844–45 (1984). While Mr. Israelitt's and the EEOC's reading of the statutory scheme, its purpose, inclusions, and exclusions is correct, when extending *Chevron* deference, the standard is simply whether the EEOC's interpretation is "reasonable":

> But it is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need not be the best one by grammatical or any other standards. Rather, the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference. See *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979). The reasonableness of the EEOC's interpretation of "terminate" in its statutory context is more than amply supported by

4

the legislative history of the deferral provisions of Title VII, the purposes of those provisions, and the language of other sections of the Act, as described in detail below. Deference is therefore appropriate.

*E.E.O.C. v. Com. Off. Prod. Co.*, 486 U.S. 107, 115–16 (1988).  Thus, if the

EEOC's interpretation is even just a "permissible construction of the statute," the

Court "must sustain the EEOC's interpretation." *Jones*, 192 F.3d at 427.

In fact, given that *Kramer's* entire analysis rests on purported statutory

silence or ambiguity, the EEOC's reasoned interpretation controls.  This Court has

explained that unless the statutory language is completely clear, "[i]f the statute is

'silent or ambiguous' with respect to the question at issue, we proceed to the

second step—determining whether the agency's interpretation of the statute is

reasonable.  An agency's reasonable interpretation will control, even if better

interpretations are possible." *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 331–

32 (4th Cir. 2014) (internal citations omitted).

Indeed, reported decisions from this Court, the D.C. Circuit, the Sixth

Circuit, and the Eleventh Circuit all indicate ADA retaliation claims are virtually

indistinguishable from Title VII retaliation claims.  *Baird v. Rose*, 192 F.3d 462,

471–72 (4th Cir. 1999) (Title VII remedies are applicable to ADA retaliation

claims); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) (same);

*Mogenhan v. Napolitano*, 613 F.3d 1162, 1165-66 (D.C. Cir. 2010) (noting that

"Title VII of the Civil Rights Act…contains anti-discrimination and anti-retaliation

5

provisions that are indistinguishable from those of the ADA"); *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997) (stating "[r]etaliation claims are treated the same whether brought under the ADA or Title VII"); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (stating "we assess ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII"). *See also Baumgardner v. County of Cook*, 108 F.Supp.2d 1041, 1044–45 (N.D.Ill.2000) (tracking legislative history concluding that if the powers, remedies, and procedures change in Title VII, they will concurrently change for the ADA).

Highlighting that the EEOC's interpretation is reasonable, numerous courts from around the country have reached the same conclusion that compensatory damages and a jury trial are available in ADA retaliation claims. *E.g. Edwards v. Brookhaven Sci. Assocs., LLC*, 390 F. Supp. 2d 225, 236 (E.D.N.Y. 2005); *Mueller v. Rutland Mental Health Servs., Inc.*, No. 1:05-CV-38, 2006 WL 2585101, at *5 (D. Vt. Aug. 17, 2006); *Aguirre v. City of Miami*, No. 04-23205-CIV, 2007 WL 9701708, at *2 (S.D. Fla. July 18, 2007); *Rumler v. Dep't of Corr., Fla.*, 546 F. Supp. 2d 1334, 1342–43 (M.D. Fla. 2008); *Baker v. Windsor Republic Doors*, (W.D. Tenn. 2009), *aff'd*, 414 App'x 764 (6th Cir. 2011). In sum, in addition to simply being correct, the EEOC's interpretation carries with it the backing of multiple cases from around the country.

For the reasons set forth in Mr. Israelitt's brief, the EEOC's *amicus* brief, and herein, compensatory damages and a jury trial are available in an ADA retaliation claim. Further, since the EEOC administers the statute at issue, its reasonable interpretation controls.

### i.    Denying Mr. Israelitt a jury trial was not harmless error.

As a fallback argument, HP argues that the trial court's denial of a jury trial was "harmless" because "the trial judge would have directed a verdict (or judgment as a matter of law) in favor of the defendant." Appellee's Brief, at 28-30. This is indisputably wrong as a matter of law and a matter of fact.

First, the very case cited by Defendant is explicit that "denial of the right to a jury trial constitutes harmless error only if the trial judge would have granted a motion for judgment as a matter of law in favor of the defendants; the standard of review for such a motion is 'whether the evidence is such, without weighing the credibility of the witnesses, that there is only one conclusion that reasonable jurors could have reached.'" *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 827 (4th Cir. 1994). As made clear throughout Appellant's brief, there are significant disputes of material fact here that can only be resolved based upon the weighing of the evidence and credibility of the witnesses. *See* Appellant's Brief, at 3-23.

Second, and just as critically, this Court need not speculate on whether the District Court "would have" entered judgment as a matter of law because as a

matter of historical fact it did not. The District Court recognized the significant disputes of material fact here and denied the defense's motion for summary judgment on the ADA retaliation claim. **JA30-53**. Then, at trial, Defendant moved for judgment as a matter of law but the District Court again declined to grant judgment as a matter of law. **JA361**. Thus, while the District Court as finder of fact found against Mr. Israelitt in its Memorandum of Decision, the procedural history of this case makes plain that there were significant factual disputes warranting denial of both the pretrial motion for summary judgment and the motion for judgment at trial.[3]

Because judgment as matter of law was not warranted (or granted) by the District Court, the denial of the right to a jury trial was not harmless.

> **b.   The District Court erroneously dismissed Plaintiff's ADA discrimination claims on summary judgment and applied the wrong legal standards.**

The District Court erroneously relied on the ADA regulations that were superseded by the ADAAA in 2008 and required Mr. Israelitt to meet a higher standard no longer operative. HP now concedes that on summary judgment the District Court erred and that it relied on the wrong regulation and standard to

---

[3] It is irrelevant that the District Court ultimately found against Mr. Israelitt as the finder of fact. Even if a district court's findings are not clearly erroneous, and thus sufficient to find against the plaintiff, that does not establish the defense is entitled to judgment as a matter of law. *Keller v. Prince George's Cnty.*, 827 F.2d 952, 955 (4th Cir. 1987). *See also Pandazides*, 13 F.3d at 833.

determine whether Mr. Israelitt suffers from a disability under the ADA and the
ADAA amendments. To avoid the obvious remedy (a remand for a jury trial on
the ADA discrimination claim), it makes the improper and incorrect argument that
Mr. Israelitt is just not disabled at all. [4]

To achieve this, HP attempts to have this Court simply construe the facts
against Mr. Israelitt. This is clearly wrong because, at the very least, there are
material facts in dispute on this issue. And since this issue is on appeal from the
District Court's grant of a motion summary judgment, those facts must be
construed in the light most favorable to Mr. Israelitt. Further, the standard is not
intended to be an exacting one.

Under the ADA Amendments Act of 2008 ("ADAAA"), the standards under
the ADA were significantly relaxed. Whether one is qualified with a disability is
considerably less exacting than pre-ADAAA version of the statute:

---

[4] HP also makes the false claim that Mr. Israelitt "does not even technically qualify
for a handicapped placard" or that he attempted to hide it – but that is just not true
and is yet another improper attempt by the defense to smear Mr. Israelitt. As set
forth in the briefing on this issue before the District Court, this was a false
characterization by the defense. ECF No. 58. Indeed, the very record that the
defense repeatedly points to simply indicates that in 2006, nearly eight years before
the events at issue, Mr. Israelitt *might* not have qualified at that time for a
*permanent* disability placard (prior to this he had temporary placards). Mr. Israelitt
freely recognized that in 2005 he only had temporary placards. JA1189. In 2008,
over five years before the events at issue in this litigation, Mr. Israelitt did qualify
for the permanent placard. JA1188. He still maintains the disability placard
through the present. JA1021.

> "In September 2008, Congress broadened the definition of 'disability' by enacting the ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553...." *Summers v. Altarum Inst., Corp.,* 740 F.3d 325, 329 (4th Cir.2014). The ADA Amendments Act (ADAAA) was intended to make it "easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4). The regulation clarifies that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." *Id.* "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub.L. No. 110–325, § 2(b)(5) (2008). In enacting the ADAAA, Congress abrogated earlier inconsistent caselaw. *Summers,* 740 F.3d at 331.

*Jacobs*, 780 F.3d at 572.  The level of impairment under the ADA is not

particularly onerous following the ADAAA:

> The regulations define a substantially limiting impairment as one that "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).[12] **"An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."** *Id.*

*Jacobs*, 780 F.3d at 573 (footnote omitted) (emphasis added).  Further, contrary to

what HP suggest now, the substantially limiting standard meant to be "construed

broadly" and "is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j).

Likewise, contrary to HP's suggestions, under the ADAAA, whether at times Mr.

Israelitt is more mobile or can walk is irrelevant.  Episodic impairments, even

infrequent impairments, clearly qualify as a disability.  42 U.S.C. § 12102(4)(D);

*Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) (quoting 29

10

C.F.R. Pt. 1630, App. at Section 1630.2(j)(1)(vii)); *Moore v. Jackson Cnty. Bd. of Educ.*, 979 F. Supp. 2d 1251, 1261 (N.D. Ala. 2013) (holding that "Plaintiff's ankle injury impairment substantially limited her ability to perform the major life activities of standing, walking, running, and her general musculoskeletal function. The fact that the limitation was temporary is irrelevant.").

Thus, HP's argument is easily disposed of. There is ample evidence in the record that Mr. Israelitt suffers from a disability. For example:

- Although not a necessary pre-condition to show a disability, medical evidence indicates he had two surgeries on his toe going back as far as 1993 and 1997. **JA1187**.

- Although not a necessary pre-condition to show a disability, medical evidence indicate that at least as far back as 2006 Mr. Israelitt was diagnosed with hallux rigiditis, he had limited range of motion in his toe, and abnormal range of motion in his right great toe. **JA1187**.

- Mr. Israelitt suffers from the degenerative condition and was indicated in 2005 and was still indicated through 2018. **JA1185-86**.

- At times Mr. Israelitt "can barely walk" because of the pain. **JA1014**.

- It is "extremely painful" and causes "[p]artial loss" of use of the foot. **JA1015-16**.

11

- The toe problem even affects his ability to dress or bathe himself. **JA1017**.

HP takes the extraordinary position that, despite this evidence in the record the District Court was entitled to make the factual finding against Mr. Israelitt and conclude he was not disabled under the ADA. This is clearly not so since all the facts and inferences therefrom must be construed in the light most favorable to Mr. Israelitt. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The District Court's failure to do so, particularly combined with its reliance on the superseded standard, was erroneous.

As a final matter, HP suggests there is no evidence of pretext. This is plainly incorrect – or at the very least a jury issue was generated.

Mr. Romas claimed he terminated Mr. Israelitt for failing to complete the area 5-15 technology roadmap. **JA1084-85**. Before the performance warning, this was a job that was assigned to two people *both* Jeff Kalibjian and Jeff Israelitt. *E.g.* **JA924, at ¶ 6**; **JA1275**. It was a "longer term project," **JA1084**, and according to HP's own internal records was anticipated to take over a year – by October 31, 2014. **JA1275; JA1291**.

The technology roadmap was initially worked on by Mr. Romas and Mr. Kalibjian, **JA1070**, but they could only complete about 50 percent of just areas 1 through 4. **JA1072**. Mr. Kalibjian recognized that creating a roadmap is a "big

task." It also often involves multiple people, often over a large amount of time, and the duration could span more than a few months. **JA1126-27**. Further, a "team" of HP personnel had trouble completing a similar project over the course of months before Mr. Israelitt was hired. **JA923-24, at ¶3**.

Under these conditions, there is little wonder Mr. Israelitt was unable to complete the project alone, during this time frame, and while also satisfactorily completing all of his other work. Not completing the Technology roadmap under these circumstances was clearly pretextual.

The suggestion that Mr. Israelitt was "disruptive" is completely belied by the record. Mr. Kalibjian, **JA1116**, Mr. Doty, **JA1181**, and Mr. Romas, **JA1079**, all refute this. Likewise, the suggestion in Defendant's motion that Mr. Israelitt was just generally a poor performer is likewise not accurate. First, general poor performance was not a basis for Mr. Romas' termination. Second, prior to his discharge (and prior to exclusion from HP Protect and the St. Augustine trip), Mr. Israelitt was satisfactorily performing. received a rating of 3.86, which easily meets expectations and is closer to *exceeding expectations*. **JA745**; **JA1159**. Further, ther than the times where he raised his disability, Mr. Israelitt received consistent praise for his work, including on September 5, 2013, **JA1222;** October 21, 2013, **JA1231; JA1115**; November 22, 2013, **JA1224;** and November 29,

2013, **JA273** ("great work" and an "[o]utstanding paper"), **JA1237, JA1122-23** (same).  *See generally*, Appellant's Brief, at 3-23.

Under the circumstances, Defendant's stated reason – the Technology Roadmap – was an impossible task and obvious set-up for termination.  Its bases for removing Mr. Israelitt from meeting, excluding him, isolating him, and tightening his deadlines, increasing his workload, and terminating him are riddled with "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that a reasonable factfinder could rationally find them unworthy of credence."  *Fordyce v. Prince George's County Md.*, 2014 U.S. Dist. LEXIS 117967, *24 (D. Md. 2014); *EEOC v. Mfrs. & Traders Tr. Co.*, 402 F. Supp. 3d 201, 234-35 (D. Md. 2019); *Dorriz v. District of Columbia*, 133 F. Supp. 3d 186, 199 (D.D.C. 2015).  At the very least, the jury, which was the finder of fact, was entitled to make this decision.

> **c.**   **The District Court erroneously held that adverse actions, including removal from meetings, increased workloads, severely tightened deadlines, and being removed from billable work, are not actionable adverse actions.**

On summary judgment, *e.g.* **JA41-42**, and again following trial, **JA77**, the District Court limited its consideration of the adverse actions taken by HP against Mr. Israelitt to his termination.  As set forth in Mr. Israelitt's brief and the EEOC's *amicus* brief, this was incorrect as a matter of law.  Indeed, HP engaged in multiple adverse actions that are sufficiently adverse for purposes of both discrimination

14

and retaliation, including removal from HP Protect 2013, being kicked out of daily meetings, kicked off the DHS team, being excluded from the St. Augustine trip, precluded from attending workshop sessions, severely tightened deadlines, and increased workloads.  *E.g.* Appellant's Brief, at 52.

HP now appears to concede that these *are* adverse actions for purposes of the ADA.  Indeed, it cannot reasonably dispute that and cites no cases to the contrary.  *See*, *e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (stating that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (holding that when an employer increases an employee's workload or tightens deadlines, that is sufficiently adverse action); *Ali v. D.C.*, 697 F. Supp. 2d 88, 92-93 (D.D.C. 2010) (threats can constitute retaliatory action); *Billings v. Town of Grafton*, 515 F.3d 39, 54-55 (1st Cir. 2008) (risk of investigation or reprimand suffices).  Going even further in *Ali*, the District of D.C. recognized that there is no bright line rule for when actions will be sufficiently adverse and, even if there are "minor inconveniences" that standing alone might not suffice, taken together may very well comprise a pattern of retaliation.  *Ali*, 697 F. Supp. 2d at 93 n. 7.

15

HP here simply attempts to distinguish the factual underpinnings of the cited cases and argues that "the instant case is past the summary judgment stage." Appellee's Brief, at 43.  As to the retaliation claim, the District Court isolated its holding solely to the termination.  The District Court declined to consider the additional adverse actions at the summary judgment stage and those facts must be construed in the light most favorable to Plaintiff.  And even assuming, *arguendo*, that individually they were insufficient, taken together establishes the wrongful pattern and discriminatory animus.

HP's claim that "there is a complete absence of animus or causal connection" is belied by the record here.  As discussed in detail in Mr. Israelitt's brief, in direct response to his raising his disability and upon engaging in the protected conduct of requesting an accommodation, following the HP Protect 2013 request Mr. Israelitt was immediately kicked out of daily meetings.  After raising his disability again before the St. Augustine trip, HP totally failed the interactive process.  Instead, he was immediately kicked off the DHS team (the only account to which a client would actually),[5] he was excluded from the trip, and was not

---

[5] In its brief, HP makes much of its claim that the billables to DHS were not *yet* billed to DHS at the time of the termination.  That is irrelevant and merely a distraction from the critical issue.  The DHS account was Mr. Israelitt's only client account to which he could bill, after requesting the accommodation he was immediately instructed that he was longer authorized to work on that project, and this indicated his employment "was seriously in jeopardy."  **JA172**.  Mr. Romas

16

permitted to attend the sessions. He was then met with severely tightened

deadlines and increased workloads. He was forced to complete a major, multi-

person, multi-month project in under 30 days. Each of these actions individually,

and certainly collectively, demonstrate adverse actions under the ADA.

For these reasons, as well as those stated in Mr. Israelitt's Brief (at 52-53)

and the EEOC's *amicus* brief (at 10-19), the District Court erred and this matter

should be remanded.

> **d. The District Court relied on evidence not admitted at trial, and which was otherwise inadmissible, in its Memorandum of Decision and Order of Judgment.**

HP concedes that in its Memorandum of Decision, the District Court erred in

relying on lengthy quotes from a "Performance Coaching Template," **JA72-73**

(quoting Defense Ex. 36, **JA815-16**), that was never admitted at trial. HP also

does not dispute that it was otherwise inadmissible – particularly since it seems to

have appeared for the first time in the litigation. **JA1088-89**.

To avoid the error, the defense once again cries "harmless," stating that it

was just one additional piece of evidence since the District Court found that "the

unrefuted evidence" was that Mr. Israelitt made "no discernable progress" towards

the goals during the performance warning period. But that is clearly wrong and the

District Court needed the non-admitted/inadmissible document to bolster that

---

admitted that if Mr. Israelitt was not permitted to charge to the DHS account, he
would be overhead. **JA410**.

statement since that *was* refuted – not just by Mr. Israelitt but by HP's decisionmaker, Mr. Romas.

Mr. Romas initially claimed he terminated Mr. Israelitt for not <u>completing</u> the technology roadmap that he demanded, **JA1084-85**, which was plainly an impossible task. *See* Appellant's Brief, at 22. At trial, Mr. Romas reversed course and claimed that, contrary to the performance warning, Mr. Israelitt <u>did not need to complete the project</u> – he only had to show "some progress." **JA420**. He then admitted that Mr. Israelitt *did* make some progress towards completing the project because he was able to complete some of the task areas even in the shortened timeframe. **JA421**.

Thus, the District Court's statement that the evidence was "unrefuted" was actually refuted by the decisionmaker and its need to rely on an unadmitted/inadmissible document to bolster that conclusion was erroneous. Under these circumstances it cannot be considered harmless and provides an additional basis for a reversal and remand for further proceedings.

## <u>CONCLUSION</u>

Appellant respectfully requests that this Court reverse the decision of the District Court and remand for further proceedings.

## **REQUEST FOR ORAL ARGUMENT**

Appellant respectfully requests oral argument.  This matter presents a significant issue of first impression in this Court that has yet to be decided in a reported opinion and concerns issues that have significantly divided the courts and relevant authorities.  Moreover, this case provides an important opportunity for this Court to set forth and reaffirm the relevant standards under the ADA and ADAAA. Oral argument will assist the Court in deciding and resolving the important issues addressed in the briefs.

Respectfully submitted,

*/s/ Levi S. Zaslow*
Levi S. Zaslow
SMITHEY LAW GROUP LLC
706 Giddings Avenue, Suite 200
Annapolis, Maryland 21401
(410) 919-2990 (phone)
(410) 280-1602 (fax)
Levi.Zaslow@smitheylaw.com
*Attorney for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as the brief contains 4,574 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as the brief has been prepared in proportionally-spaced typeface using Microsoft Word in 14 point Times New Roman font.

3.      As permitted by Fed. R. App. P. 32(g), the undersigned relied upon the word count of a word-processing system in preparing this certificate.

*/s/ Levi S. Zaslow*
Levi S. Zaslow

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that in accordance with FRAP 26(a) and Local Rule 26, September 5, 2022 was a state holiday and, therefore, on September 6, 2022 a copy of the foregoing was filed to be transmitted via this Court's CM/ECF electronic filing system to: all counsel of record in this matter.

*/s/ Levi S. Zaslow*
Levi S. Zaslow